**NORTHERN DISTRICT OF NEW YORK
UNITED STATES DISTRICT COURT**

---

**First Financial Insurance Company,**

                **Plaintiff**

                                                                  **1:04-CV-0413**

v.                                                               **(NAM/DRH)**

**Josh LaPointe, R U Krazy, Inc.,** *d/b/a/*
**BD Hooligan's, Barry Townsend** *and*
**Shannon Townsend,**

                **Defendants.**

---

APPEARANCES:

                                              OF COUNSEL:

Ford, Marrin, Esposito,                           James M. Adrian, Esq.
Witmeyer & Gleser, LLP
Wall Street Plaza, 23rd Floor
New York, New York 10005-1875
*Attorneys for Plaintiff*

Office of James M. Dingley                  James M. Dingley, Esq.
P.O. Box 1309
Manchester Center, VT 05255
*Attorney for Defendant Josh LaPointe*

**Hon. Norman A. Mordue, D.J.:**

                                **MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      Plaintiff First Financial Insurance Company ("FFIC") moves for summary judgment in this action for judgment declaring that FFIC does not owe defense and indemnification to defendants R U Krazy, Inc. d/b/a BD Hooligan's, Barry Townsend and Shannon Townsend (collectively, "Hooligan's") in connection with a personal injury action commenced against Hooligan's by defendant Josh LaPointe ("LaPointe"). For the reasons set forth below, the Court

grants FFIC's motion for summary judgment.

## II.     FACTUAL BACKGROUND

On January 5, 2004, LaPointe commenced a personal injury action against Hooligan's in Bennington Superior Court, County of Bennington, State of Vermont, entitled *Josh LaPointe v. R U Krazy, Inc., d/b/a/ BD Hooligan's, Barry Townsend and Shannon Townsend*.  In his complaint LaPointe alleged that Hooligan's owns and operates a bar in Town of Hoosick, Rennselaer County, New York; that on May 11, 2003, while a patron at the bar, LaPointe "was stabbed in the chest by another patron"; and that his injury was a direct result of (1) Hooligan's negligent hiring, training, and supervision of its employees; (2) Hooligan's negligent supervision and control of its patrons and others; (3) Hooligan's negligence in failing to make the premises safe and to warn the public of the hazards therein; and (4) Hooligan's furnishing of liquor to a person or persons who were intoxicated.

The complaint against Hooligan's does not set forth the events that led to the stabbing. Documents submitted by FFIC in support of its motion for summary judgment include LaPointe's emergency room report which provides the following account of events:

> The patient [LaPointe] is a 23-year-old healthy male who was out at a stag party at Hooligan's bar this evening.  Patient saw a gentleman strike a girl and confronted this gentleman.  Within the matter of a brief moment a brawl broke out in the bar, and the patient was punched in the right eye region and then felt the warm fluid running down his left side.

In a letter to the insured dated July 15, 2003, LaPointe's counsel stated that "LaPointe suffered serious bodily [injury] as he was stabbed in the chest, punched repeatedy, kicked and pushed to the ground."

Hooligan's requested that FFIC provide defense, indemnity or reimbursement to

2

Hooligan's in connection with LaPointe's personal injury action. FFIC disclaimed coverage on various grounds including the policy exclusion of coverage for injury arising out of assault or battery.[1] The exclusion provides in relevant part as follows:

Exclusion - Assault or Battery

This insurance does not apply to:
a. "Bodily injury" or "property damage":
   (1) Expected or Intended from the standpoint of any insured; or
   (2) Arising out of assault or battery or out of any act or omission
       in connection with the prevention or suppression of an
       assault or battery.

On April 12, 2004, FFIC filed the complaint herein seeking judgment declaring that FFIC has no duty to provide defense or indemnity to Hooligan's in connection with LaPointe's personal injury action against Hooligan's.[2] Presently before the Court is FFIC's motion for summary judgment.

## III.   DISCUSSION

---

[1] Additionally, FFIC disclaimed coverage based on the "Amendment of Liquor Liability Exclusion" which states in relevant part:
   This insurance does not apply to:
   c.   "Bodily injury" or "property damage" for which any insured or
        his indemnitee may be held liable by reason of:
        (1) Causing or contributing to the intoxication of any person;
        (2) The furnishing of alcoholic beverages to a person under the
            legal drinking age or under the influence of alcohol;
        (3) Any statute, ordinance or regulation relating to the sale, gift,
            distribution, or use of alcoholic beverages.
LaPointe does not dispute that this provision excludes coverage for his claim that Hooligan's caused his injury by furnishing liquor to a person or persons who were intoxicated. Accordingly, the Court does not address this issue.

[2] R U Crazy, Inc. d/b/a/ BD Hooligan's, Barry Townsend and Shannon Townsend failed to appear in this action. Default judgment against them was entered on February 8, 2005.

### A.    Applicable Law

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

The New York Court of Appeals has stated that where an insurer seeks summary judgment declaring that it has no duty to defend or indemnify its insured on the basis of a policy exclusion, "the insurer bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.,* 91 N.Y.2d 169, 175 (1997). "If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Incorporated Vill. of Cedarhurst v. Hanover Ins. Co.*, 89 N.Y.2d 293, 298 (1996). With these considerations in mind, the Court addresses FFIC's motion for summary judgment.

### B.    Application of Assault or Battery Exclusion

4

It is well established under New York law that, to recover damages for assault, a plaintiff must prove physical conduct placing the plaintiff in imminent apprehension of harmful contact. To recover damages for battery, a plaintiff must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent. *See Bastein v. Sotto*, 749 N.Y.S.2d 538, 539 (2d Dep't 2002).

The New York Court of Appeals addressed the application of assault and battery exclusions in *U.S. Underwriters Ins. Co. v. Val-Blue Corp.*, 85 N.Y.2d 821 (1995), and *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347 (1996).[3] In *U.S. Underwriters*, the insurer sought judgment declaring that it had no duty to defend or indemnify its insured in a lawsuit claiming that the plaintiff had been shot by a security guard in the insured's nightclub. The complaint alleged that the guard "negligently, carelessly and recklessly" shot the plaintiff, and asserted claims against the insured based on *respondeat superior* and negligent hiring, supervision and training of employees. New York's high court held that an exclusion in the policy for lawsuits "based on assault and battery" applied, stating:

> The injury being sued upon here is an assault and battery. The plethora of claims surrounding that injury, including those for "negligent shooting" and "negligent hiring and supervision" are all "based on" that assault and battery without which [the plaintiff] would have no cause of action.

85 N.Y.2d at 823. The court held that summary declaratory judgment was proper. *Id.*

In *Mount Vernon*, New York's Court of Appeals addressed the application of an assault

---

[3] On appeal from a district court decision in *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 797 F. Supp. 176 (E.D.N.Y. 1992), the Second Circuit certified questions to the New York Court of Appeals. 70 F.3d 720 (2nd Cir. 1995). The State high court answered the questions, 88 N.Y.2d 347 (1996), whereupon the Second Circuit decided the appeal. 93 F.3d 63 (1996).

and battery exclusion where the victim of an assault occurring inside a building sued the building's owner alleging negligent supervision, management and control of the premises. The owner sought defense and indemnification from its insurer, which disclaimed coverage, relying on the policy's exclusion for "any claim, demand or suit based on Assault and Battery." In addressing the coverage issue, the court stated that "when a third party perpetrates an assault, the basis of the victim's claim for negligent failure to maintain safe premises against the insured is assault." 88 N.Y.2d at 350. The court added:

> [T]he language of the policy controls ... and while the theory pleaded may be the [owner]'s negligent failure to maintain safe premises, the operative act giving rise to any recovery is the assault. While the [owner]'s negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the [owner]'s right to coverage based on the language of the contract between him and the insurer. Merely because the insured might be found liable under some theory of negligence does not overcome the policy's exclusion for injury resulting from assault.

*Id*. at 352. If it is determined that the action would not exist "but for" the assault, "it is immaterial whether the assault was committed by the insured or an employee of the insured on the one hand, or by a third party on the other." Id. at 353. The *Mount Vernon* court further held that the phrases "based on" and "arising out of" when used in insurance policy exclusion clauses are unambiguous and legally indistinguishable. *Id.* at 350.

Thus, under *U.S. Underwriters* and *Mount Vernon*, in deciding whether the assault and battery exclusion applies in the case at bar, this Court must determine whether the complaint in the underlying action alleges injury "arising out of" assault or battery. *See also Downtown Bar & Grill, Inc. v. Sphere Drake Ins. Co.*, 1997 WL 188139, *4 (S.D.N.Y. 1997). LaPointe's complaint alleges that while at Hooligan's bar he "was stabbed in the chest by another patron." This is not an allegation that LaPointe was the victim of an accident. The plain meaning of this

allegation is that another patron in the bar wounded him by purposefully thrusting a knife or other sharp object into his chest. [4] It cannot reasonably be read to allege that the patron did so without intending to make contact with him. Nor can the complaint reasonably be read to aver that LaPointe consented to the contact. Thus, the complaint on its face clearly claims that a patron of the bar committed a battery upon LaPointe, that is, intentionally made bodily contact with him without his consent, causing the injury for which LaPointe seeks damages. *See generally Bastein*, 749 N.Y.S.2d at 539 (stating that the elements of a battery are intentional bodily contact made without the victim's consent).

      LaPointe argues that *U.S. Underwriters* and *Mount Vernon* do not support FFIC's motion because his complaint is premised on an injury which occurred as a result of negligence rather than as a result of assault or battery. The only negligence alleged, however, is that of Hooligan's; there is no claim that the patron negligently injured LaPointe. As against Hooligan's the complaint alleges that it had hired employees to prevent injuries such as plaintiff's; that the employees were not properly trained or qualified to prevent such injuries; that Hooligan's failed to supervise and control its patrons and employees; that it knew or should have known that the premises were "dangerous, unsafe and unsuitable for members of the public"; that it failed to take appropriate steps to make the premises safe and to warn the public; and that it sold liquor to people who were apparently intoxicated. Thus, the claims against Hooligan's arise from the alleged battery, that is, from Hooligan's negligence in failing to prevent another patron from committing battery upon LaPointe. Accordingly, LaPointe's claims against

---

[4] The meaning of the word "stab" is "[t]o wound (often to kill) with a thrust of a pointed weapon (chiefly, with a short weapon, as a dagger)." *Oxford English Dictionary Online*, Oxford University Press 2005.

Hooligan's clearly fall within the policy exclusion for bodily injury "[a]rising out of assault or battery or out of any act or omission in connection with the prevention or suppression of an assault or battery."

On this record, FFIC has demonstrated its entitlement to summary judgment. In view of the plain wording of the complaint, there is no merit to LaPointe's argument that FFIC is unable to demonstrate that his injury was caused by a battery instead of an accident.[5] As stated, it defies reason to suggest that in stabbing LaPointe as alleged in the complaint, the patron did not intend to make contact with him, or that LaPointe consented to the contact. There is no extrinsic evidence to the contrary; rather, the documents outside of the complaint – specifically the medical records, correspondence and insurance claim documents – support FFIC's motion. There is no evidence which would create a material question of fact, nor is there any reason to believe that such evidence might exist.

## IV. CONCLUSION

The Court concludes that under the plain wording of the underlying complaint, LaPointe's claim falls within the insurance policy's exclusion of coverage for bodily injuries "[a]rising out of assault or battery or out of any act or omission in connection with the prevention or suppression of an assault or battery." Moreover, there is no evidence in the record

---

[5] There is no merit to LaPointe's argument that, because "it is not known whether the patron intended to inflict injury on" LaPointe, FFIC is unable to demonstrate that his injury was caused by a battery. First, intent to injure is not an element of assault or battery. Second, there is nothing aside from mere conjecture and speculation to suggest that the assailant may have intended to stab someone else instead of LaPointe. Even the location of the stab wound – LaPointe's chest, the vicinity of vital organs – is consistent with purposeful conduct directed towards LaPointe. In any event, mere conjecture and speculation are insufficient to raise a question of fact.

to support a contrary conclusion, nor any reason to believe that such evidence may exist. FFIC has carried its burden of demonstrating that the allegations of the complaint cast the pleadings wholly within the exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision. There are no material questions of fact. Thus, FFIC is not obligated to defend or indemnify Hooligan's in connection with LaPointe's lawsuit.

It is therefore

ORDERED that the motion by First Financial Insurance Company for summary judgment is granted; and it is further

DECLARED that First Financial Insurance Company does not owe defense and indemnification to R U Krazy, Inc., d/b/a/ BD Hooligan's, Barry Townsend and Shannon Townsend in the action in Bennington Superior Court, County of Bennington, State of Vermont, entitled *Josh LaPointe v. R U Krazy, Inc., d/b/a/ BD Hooligan's, Barry Townsend and Shannon Townsend.*

IT IS SO ORDERED.
September 12, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge